IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WAKE 10, LLC,

        Plaintiff,

v.                                                 Case No.  21-2257-JWB

MCNAUGHTON, INC., and PATRICK MCNAUGHTON,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction.  (Doc. 9.)  The motion has been fully briefed and is ripe for decision.  (Docs. 10, 11, 13.)  For the reasons provided herein, Defendants' motion is GRANTED.

**I.**    **Facts**

The facts set forth herein are taken from Plaintiff's complaint and the declarations of Plaintiff's representative.  Plaintiff WAKE 10, LLC, is a Kansas limited liability company that manufactures and sells wakesurfing and marine products.  Plaintiff's sole member, Casey Heim, is a citizen of Kansas.  Defendant McNaughton, Inc., is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.  Defendant Patrick McNaughton is the president and chief executive officer of McNaughton, Inc., and may be served in Plymouth, Minnesota.  McNaughton, Inc. is one of Plaintiff's competitors and sells wakesurfing and marine products under the "Tidal Wake" brand.  (Doc. 1 at ¶ 14.)

Plaintiff sells its products primarily through Amazon.com.  Plaintiff has a seller profile on Amazon.com.  That profile provides Plaintiff's business address in Kansas.  (Doc. 11-1 at 2.)  When purchasing one of Plaintiff's items on Amazon, a customer can click the hyperlink on the

1

seller's name which will take the customer to Plaintiff's seller's profile.  (*Id.* at 1-2.)  Since July 2019, McNaughton has left false and misleading reviews, feedback, and comments (referred to throughout as "negative reviews") regarding Plaintiff's products on Plaintiff's product listing and seller pages under the username "G Leak."  (Doc. 1 at ¶ 5.)  Product reviews are important to Plaintiff's business and the negative reviews left by McNaughton have caused Plaintiff substantial harm.

On July 30, 2019, McNaughton left a 1-star review on Plaintiff's product listing on Amazon.com for its WAKE 10 Wakesurf Creator product.[1]  The negative review stated that the product "fell off the boat many times, suction does not work very well. It is very heavy it even broke the tether that came with it. Literally it bent the hook to attach to your boat. For the short time it stuck to the boat, the wake improved some, not great. I have used other friends wake devices that work well, so I was tempted by this low price unit but don't fall for the low price it just does not work." (*Id.* at ¶ 25.)  Plaintiff alleges that this review contains false and deceptive statements in that the product is not defective and Defendant has misrepresented that he is a customer, not a competitor of Plaintiff.  That negative review received three "helpful" votes, causing it to appear as the second review that potential customers see on the product page.  Plaintiff alleges that the "helpful" votes were made by Defendants or those affiliated with Defendants.  This caused a negative effect on Plaintiff's product ranking and review score because the product had only been on sale for one month and it did not have very many reviews as a result.

McNaughton continued to post negative reviews about the product on Plaintiff's listing. On June 24, 2020, McNaughton wrote that the product "fell off my boat all the time.  It didn't work that well on my boat.  I got rid of Wake10 and purchased the TidalWakeXLR8 and love it."

---

[1] At that time, Plaintiff was unaware of G Leak's identity as McNaughton.  Plaintiff discovered G Leak's identity in August 2020.

(*Id.* at ¶ 30.)  On July 9, 2020, McNaughton again posted another response to a customer question regarding Plaintiff's product which stated that it kept falling off his boat, did not make the great wake, his friends had a similar experience, and that he "got rid of it and purchased the Tidal Wake XLR8 on Amazon and love it."  (*Id.* at ¶ 32.)  Plaintiff alleges that these comments are false and misleading because he continues to represent he is a customer and also falsely states that the product is defective.  Plaintiff alleges that McNaughton has left "several other negative responses to customer questions containing false and misleading information that are still visible on Plaintiff's Amazon page."  (*Id.* at ¶ 34.)

On July 20, 2020, Plaintiff launched a new product called the WAKE 10 Boat Ballast Bag. On August 19, 2020, McNaughton again submitted a negative seller feedback of the new product which stated the "[i]tem leaked, very hard to fill with water in the small zipper opening...I will return.  My boats [sic] carpets got soaked."  (*Id.* at ¶ 36.)  Because McNaughton had left the negative review as a seller feedback, Plaintiff was able to see his purchase history and determine that both products were shipped to McNaughton, Inc.'s address in Plymouth, Minnesota.  After discovering that McNaughton had left the negative review, Plaintiff issued a complaint to Amazon because Amazon prohibits sellers from leaving negative reviews on competitor pages and posing as a customer.  Amazon then removed the August 19, 2020, seller feedback.

Based on the order history reflected in the complaint, McNaughton's orders were fulfilled by Amazon but there is no indication as to where the orders were shipped from.  (*Id.* at ¶ 40.) Plaintiff's complaint does not include any allegations regarding where the product shipment originated.  In its sur-reply, Plaintiff has represented that it ships its products to Amazon from Kansas, where those products are stored in a temporary warehouse.[2]  (Doc. 14-1 at 1-2.)  The items

---

[2] Plaintiff's motion for leave to file a sur-reply (Doc. 14) is granted; the court has considered Plaintiff's sur-reply (Doc. 14-1) in ruling on the motion to dismiss.

are then shipped by Amazon from the temporary warehouses to the customer after an order is placed on Amazon.  Plaintiff has not identified in its sur-reply, and perhaps does not know, the location of the temporary warehouses that stored Plaintiff's products prior to being shipped to Defendants.

Plaintiff filed this action against Defendants alleging claims of false association and false advertising under the Lanham Act, 15 § 1125(a)(1)(A) and (B) and Kansas state law.  Defendants now move to dismiss arguing that this court lacks personal jurisdiction over Defendants. Alternatively, Defendants move to dismiss on the basis that Plaintiff's complaint fails to state a claim.

## II.     Standard

On a Rule 12(b)(2) motion to dismiss, a plaintiff must make a prima facie showing that the court has personal jurisdiction over defendant. *Old Republic Ins. Co.*, 877 F.3d at 903.  The court must accept the allegations in the complaint as true and resolve all factual disputes in Plaintiff's favor notwithstanding contrary positions by Defendant. *Id.*  The court may consider affidavits in deciding a motion to dismiss based on lack of personal jurisdiction. *Richardson v. Fowler Envelope Co., LLC*, 288 F. Supp. 2d 1215, 1219 (D. Kan. 2003).

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

4

### III.     Analysis

In determining whether a federal court has personal jurisdiction over a non-resident defendant, the court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation omitted).  Because the Lanham Act does not, by itself, provide for nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) refers the court to the Kansas long-arm statute which allows jurisdiction to the full extent permitted by due process and, therefore, the court proceeds directly to the constitutional issue.  *Id*.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotations omitted).  Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979).  The requisite minimum contacts may be established under one of two theories: "specific jurisdiction" or "general jurisdiction."  If the requisite minimum contacts are met, the court proceeds to determine whether the "assertion of personal jurisdiction would comport with fair play and substantial justice." *Old Republic Ins. Co. v. Cont'l Motors, Inc*., 877 F.3d 895, 903 (10th Cir. 2017).

Plaintiff contends that the complaint establishes specific jurisdiction in this matter.  Specific jurisdiction applies when a defendant has purposefully availed itself of the privilege of conducting activities in the state and the suit arises out of or relates to a defendant's contacts with the forum state.  *Monge v. RG Petro-Machinery (Grp.) Co. Ltd*., 701 F.3d 598, 613-14 (10th Cir.

2012).   "Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state...The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (internal citations omitted).  To further satisfy specific jurisdiction, Plaintiff's injury "must arise out of or relate to activities that [defendants] purposefully directed at residents of the forum."  *Monge*, 701 F.3d at 617.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court articulated what is known as the "*Calder* effects test."  In *Calder*, the Court held that a sufficient nexus exists between the defendant and the forum state when a defendant intentionally engages in tortious actions outside the state, and his actions are expressly directed at causing a harmful effect within that state. *Id.* at 789-90 (*see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)).  In *Dudnikov*, the Tenth Circuit refined the *Calder* test to three elements.  *See Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1204–06 (D. Kan. 2016).  A non-resident defendant has "purposefully directed" its activities at Kansas or its residents when the defendant has (1) taken intentional action that was (2) expressly aimed at Kansas with (3) knowledge that the brunt of the injury from the action would be felt in Kansas. *Id.*; *Dudnikov*, 514 F.3d at 1072.  Further, the Tenth Circuit has taken a relatively "restrictive" approach in that courts evaluating the expressly-aiming requirement must determine "where was the 'focal point'" of the defendant's intentional action.  *Dudnikov*, 514 F.3d at 1074-75 & n. 9 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)).  The fact that a defendant is alleged to have committed an intentional tort that causes injury to a forum resident does not necessarily establish that a defendant has engaged in the constitutionally minimum contacts with the state; plaintiff must

6

show there was "something more" than the mere foreseeability of economic injury. *Advisors Excel, LLC v. Senior Advisory Grp., LLC*, No. 11-4015-JAR, 2011 WL 3489884, at *7 (D. Kan. Aug. 10, 2011). "[T]hose courts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. Instead, they have emphasized that the defendant had additional contacts with the forum." *Far W. Capital*, 46 F.3d at 1078; *see also IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (explaining that *Calder* did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state.")).

Plaintiff alleges that McNaughton's conduct meets the *Calder* test.[3]  Plaintiff argues that the negative reviews, purchases of the products on Amazon, and the resulting injury to a Kansas business are sufficient to establish the *Calder* test.  In support of its argument, Plaintiff contends that this case lines up "almost precisely with the facts in *Inspired by Design*." (Doc. 11 at 6.)  In that case, the plaintiff was a Kansas company that made pet beds and other pet products. *Inspired by Design, LLC,* 200 F. Supp. 3d at 1199.  The plaintiff sold her products on the website Etsy.  The defendants were plaintiff's competitors and located in California.  One of the defendants had a friend purchase the plaintiff's pet bed product online and it was shipped from Kansas to California.  Notably, the plaintiff shipped the bed from Kansas to California, at an address associated with one of the defendants. *Id.* at 1205.  The defendants then made modifications to their product based on the plaintiff's design, which caused "actual customer confusion." *Id.* at 1200.  The defendants also

---

[3] With respect to McNaughton, Inc., Plaintiff relies on McNaughton's conduct as McNaughton, Inc.'s agent to satisfy personal jurisdiction.  Although Defendants argue that this agency theory is not sufficient to establish personal jurisdiction over the company, the court need not reach this argument because the court has determined that McNaughton's conduct is not sufficient to establish personal jurisdiction over McNaughton.  Therefore, Plaintiff cannot establish personal jurisdiction over his company based on that same conduct.

modified their webpage to show certain features which were replicas of the features of the plaintiff's custom pet beds.  *Id.* at 1199.

The plaintiff argued that the defendants purposefully directed their conduct at Kansas by ordering one of the plaintiff's beds from Kansas and modifying the bed and their website.  *Id.* at 1205.  Notably, the defendants did not respond to these arguments.[4]  The court held that the plaintiff had made a prima facie showing of purposeful direction sufficient to establish specific jurisdiction by alleging that defendants:

> (1) committed intentional action by purchasing, through Mr. Gage, one of plaintiff's pet beds and, afterwards, modifying their Etsy webpage and pet beds to look like even closer replicas of plaintiff's products; (2) expressly aimed their conduct at the forum state by purchasing one of plaintiff's custom pet beds from Kansas; and (3) had knowledge that the brunt of the injury (i.e., copying plaintiff's custom bed beds) would be felt in the forum state where plaintiff operates its business.

*Id.* at 1206.

Based on the holding in *Inspired by Design, LLC*, Plaintiff argues that the conduct alleged in this case provides more than enough contacts necessary for this court to exercise personal jurisdiction over Defendants.  (Doc. 11 at 9.)  The court disagrees.  Turning to the facts in this case and the *Calder* effects test, the court finds that Plaintiff has sufficiently alleged that McNaughton committed intentional acts of leaving negative reviews on Plaintiff's product pages.  Plaintiff has also sufficiently alleged that McNaughton purchased Plaintiff's products on three occasions, although it does not appear that McNaughton posted any negative reviews after the third purchase.  What is missing, however, is the "something more," which would satisfy the requirement that Defendants expressly aimed their conduct at Kansas.

---

[4] The defendants had argued, and the court agreed, that their maintenance of a website was not sufficient to establish personal jurisdiction under Tenth Circuit precedent.  *Inspired by Design, LLC*, 200 F. Supp. 3d at 1205.

In *Inspired by Design, LLC*, the court found that the "something more" was the purchase of the custom beds from Kansas.  Here, there is no allegation that McNaughton's purchases were shipped by Plaintiff directly from Kansas to Minnesota.  Rather, the purchases were shipped to McNaughton by Amazon from a temporary warehouse at an unknown location.  As such, the basis for the court's finding in *Inspired by Design, LLC*, is absent here.  Notably, Plaintiff's brief makes no mention of the shipping of its products in its response brief.  In its sur-reply, Plaintiff argues that "Amazon fulfills orders and acts as a 'final-leg' shipment to end customers... Here, the end customers were Defendants, who received Plaintiff's products (which came from Kansas) from Amazon's temporary storage."  Doc. 14-1 at 1.  But Plaintiff fails to argue or cite to any authority that this shipping process provides a basis for this court to exercise jurisdiction over Defendants.  Although this court is not bound by the holding in *Inspired by Design, LLC*, the court finds that the facts in that case are distinguishable in that there are no allegations here that the products purchased by McNaughton were shipped directly from Kansas to Minnesota.  Therefore, the purchase of Plaintiff's products cannot satisfy Plaintiff's requirement to show that McNaughton expressly aimed his conduct at Kansas.

Turning to the remaining allegations, Plaintiff argues that the negative reviews are sufficient to establish that McNaughton purposefully directed his conduct towards Kansas because he knew that the products originated from Kansas and that Plaintiff was located in Kansas.  The Tenth Circuit has previously reviewed whether posting defamatory statements online is sufficient to confer specific personal jurisdiction.  The court of appeals has held that

> Posting on the internet from [outside the forum state] an allegedly defamatory statement [] ... does not create the type of substantial connection between [the poster] and [the forum state] necessary to confer specific personal jurisdiction.  The plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*.  Rather, defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise

make the forum state the focal point of the message.  The thrust of this case law is consistent with this circuit's restrictive reading of *Calder*: Some courts have held that the 'expressly aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum resident. We have taken a somewhat more restrictive approach, holding that *the forum state itself must be the focal point of the tort*.

*Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (emphasis in original) (internal citations and quotations omitted).

Here, the negative reviews were posted on Plaintiff's product pages on Amazon.com. Plaintiffs do not assert that Amazon.com is geographically limited to Kansas or its residents. Rather, Amazon.com is a geographically-neutral forum that is accessible and presumably intended to reach, at a minimum, a nationwide audience.  Turning to the negative reviews, the court finds that they are geographically neutral and not focused or directed at Kansas or its residents.  Rather, McNaughton's reviews and comments are focused entirely on the product at issue.  McNaughton claimed that the product fell off his boat, it was heavy, he encouraged buyers not to purchase the product, and, ultimately, pointed potential buyers to his product by referencing it by name and praising his product.  These comments were all geographically-neutral.  None of the comments make any reference to Kansas or the fact that the manufacturer is located in Kansas.  The comments also do not disparage Plaintiff directly but criticize the product that is for sale on Amazon.com. The Tenth Circuit has held that disparaging comments on a geographically-neutral website were not sufficient to establish personal jurisdiction when the comments were intended to target a nation-wide or world-wide audience with no inherent interest or tie to the forum state.  *Shrader v. Biddinger*, 633 F.3d 1235, 1246 (10th Cir. 2011).

In *Shrader*, the Tenth Circuit addressed whether one defendant, Biddinger, could be subject to personal jurisdiction in Oklahoma based on the posting of an allegedly defamatory email about the termination of a business relationship with the plaintiff on an internet forum in response to an

inquiry from another forum member about the plaintiff's work.  *Id.* at 1244.  The court of appeals discussed that the website forum had no particular connection with Oklahoma but it was a website with a geographically-neutral nature.  The plaintiff's work was sold on the internet and the plaintiff suffered harm in Oklahoma "in the sense that he incurred harm and resided in Oklahoma when he did so."  *Id.* at 1245.  The court of appeals distinguished the defendant's conduct in *Shrader* from the activities in *Silver v. Brown*, 382 F. App'x. 723 (10th Cir. 2010).  In that case, the defendant had created a blog to post a derogatory message about the plaintiff.  The message was "not a neutral forum already in place for other purposes, but was created by the defendant specifically to provide a launch pad for his attack on the plaintiff's business."  *Shrader*, 633 F.3d at 1245.  Notably, the plaintiff's business involved raising capital for new ventures, the forum state was the center of the business activities, and the court found that "the derogatory message and the blog it was posted on uniquely targeted a business centered in the forum state and [was] directed at an audience that would inherently have included a substantial number of forum state residents and businesses."  *Id.* In contrast, the actions in *Shrader* were clearly distinguishable.  *Id.*  The message was geographically-neutral as was the forum it was posted on and there was no basis to conclude that the defendant targeted his post at Oklahoma.  Instead, it appeared that he intended to target a nation-wide or world-wide audience.  *Id.* at 1246.  The Tenth Circuit concluded that the defendant's actions were an insufficient basis for jurisdiction.  *Id.*

This case is similar to *Shrader* in that the message was posted on a website that is a neutral forum already in place for other purposes, namely a nation-wide or world-wide marketplace for sellers and buyers.  The messages posted by McNaughton were geographically neutral and there is no indication that he was targeting his post at Kansas or Kansas residents.  While Kansas residents likely purchase products from Amazon, there is no indication that Kansas residents

purchase items on Amazon or from Plaintiff's product page more frequently than citizens of other states. Rather, as in *Shrader*, every indication is that McNaughton was targeting a nation-wide or world-wide audience in that he wanted to dissuade as many people as possible from purchasing Plaintiff's products and encourage them to purchase his products instead. McNaughton was not intentionally limiting that negative attack on Plaintiff's product to Kansas purchasers.

Plaintiff's arguments in support of specific jurisdiction are overly focused on the fact that Plaintiff is a Kansas business and Defendants allegedly had knowledge that the injury would be felt in Kansas. While Plaintiff must make a prima facie showing of knowledge of injury in the forum state, Plaintiff is also required to show that Defendants expressly aimed their conduct at Kansas. This requires a showing that Defendants "deliberately directed its message at an audience in the forum state" or made the forum state the focal point of the message. *Id.* at 1241, 1244. Plaintiff has failed to make this showing. Plaintiff has also failed to identify any additional contacts Defendants have had with the forum state which could support a finding of personal jurisdiction. Therefore, the court finds that Plaintiff has failed to show that Defendants expressly aimed their conduct at Kansas or its residents.

The court finds that Plaintiff has not made a prima facie showing that the court has personal jurisdiction over Defendants.

## IV.   Conclusion

Defendants' motion to dismiss (Doc. 9) is GRANTED. Plaintiff's motion for leave to file a sur-reply (Doc. 14) is GRANTED. This matter is dismissed, without prejudice, for lack of personal jurisdiction.

IT IS SO ORDERED.  Dated this 2nd day of March 2022.

____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE